# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Takari Elliott,<br><br>    Defendant. | Case No. 21-cr-10354-JEK |

## MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ACTS OF VIOLENCE UNRELATED TO TAKARI ELLIOTT

Defendant, Takari Elliott, moves *in limine* to exclude evidence of three violent acts committed by alleged coconspirators that lack any nexus to Mr. Elliott or his alleged participation in the alleged Cameron Street criminal enterprise.[1] The government's trial brief (ECF No. 1332) indicates that it seeks to admit evidence of these incidents against Mr. Elliott. These include (1) a June 11, 2018 shooting of Victim No. 11 by Daronde Bethea; (2) a March 21, 2019 shooting of Victim No. 14 by Clayton Rodrigues and Eric Correia; and (3) a June 15, 2021 assault of Victim Nos. 9 and 10 by Anthony Centeio and Keiarri Dyette.

Mr. Elliott did not commit these acts. Nor was he involved in them. Cameron Street is not on trial here – only Mr. Elliott is. And these acts are not relevant to Mr. Elliott, who is the sole

---

[1] In its 21-day discovery produced pursuant to Local Rule 116.2 and the Court's pretrial order (ECF 1304), the government has disclosed four additional violent acts: a February 26, 2022 shooting outside 72 Hancock involving Felisberto Lopes; a May 8, 2014 hooting of Semedo outside CW-1's home (and subsequent retaliatory acts between Cameron Street and Wendover/NOB); a August 9, 2017 shooting of Amilton Dossantos and James Gomes; and a May 17, 2018 shooting by CW-3 of Teixeira.  Counsel assumes evidence of these four incidents were disclosed pursuant to the government's obligations under *United States v. Giglio*, 405 U.S. 150 (1972), as information that may be used to impeach the credibility of the government's witnesses. Mr. Elliott reserves his right to object to admission of evidence relating to these four incidents for any purpose other than to impeach CW-1 or CW-3. This evidence is inadmissible as substantive evidence against Mr. Elliott.

defendant scheduled for trial on February 23, 2026.  Mr. Elliott is charged with one count of RICO conspiracy. This means that the government must prove more than the fact that Cameron Street members committed crimes. It must prove beyond a reasonable doubt that *Mr. Elliott* agreed that Cameron Street would engage in a pattern of racketeering activity.  To be admissible, these three violent acts must bear some nexus to Mr. Elliott. The conspiracy charge alone does not afford the government a carte blanche to introduce every crime allegedly committed by Cameron Street members. Doing so would effectively open the floodgates to cumulative and irrelevant testimony untethered to Mr. Elliott or his alleged agreement that Cameron Street further criminal acts.

Worse, it would expose the jury to highly inflammatory testimony of violence planned and executed solely by co-defendants who are not joined in this trial. Without other defendants present in the courtroom, the culpability for two callous shootings and one vicious assault will be unfairly redirected to Mr. Elliott, who alone is the subject of the jury's deliberation. This exacerbates the immense prejudice that already naturally flows from this highly provocative and damaging testimony. The result is a high danger of unfair prejudice to Mr. Elliott that substantially outweighs any probative value offered by this testimony, and therefore, is inadmissible.

What is more, testimony about violent acts lacking any connection to Mr. Elliott is highly likely to mislead the jury or confuse the issues. The jury will be asked to decide whether Mr. Elliott agreed that someone in Cameron Street would commit at least two predicate acts. The jury will not be asked to decide the broader question of whether members of Cameron Street engaged in violent acts, apart from their connection to Mr. Elliott. Admitting evidence of acts with no

nexus to Mr. Elliott invites confusion about whether the jury is sitting in judgment of Mr. Elliott or the alleged gang in its entirety.

Therefore, Mr. Elliott respectfully requests that the Court enter an order excluding evidence of the three, above-mentioned violent acts.

## BACKGROUND

Mr. Elliott is charged with RICO conspiracy in violation of 18 U.S.C. § 1962(d). The RICO conspiracy count charges fifteen individuals – Mr. Elliott and fourteen other alleged associates of Cameron Street – with knowingly and intentionally conspiring to violate 18 USC § 1962(c) by participating in Cameron Street's affairs through a pattern of racketeering activity that includes various acts of murder, robbery, and illegal drug transactions. ECF 403, ¶ 8. Mr. Elliott is specifically charged with engaging in three overt acts as part of the alleged conspiracy – two drug transactions and aiding and abetting the murder of Manuel Duarte. ECF 403, ¶¶ 10(cc), 10(dd), 10(ee). Mr. Elliott is only defendant scheduled for trial.

In its trial brief (ECF 1332), the government summarizes the evidence it intends to introduce at trial against Mr. Elliott. Among other evidence, the government describes various "[a]cts [i]nvolving [m]urder" and one violent assault. ECF 1332, pp. 9-14. Most of these events have nothing to do with Mr. Elliott or his participation in the alleged conspiracy.

1) *June 11, 2018 shooting of Victim No. 11 by Daronde Bethea ("2018 act").*

Victim No. 11, a member of rival gang Wendover/NOB, was shot at or around 679 Columbia Road in Dorchester and suffered a collapsed lung. CW-3 states that he rode in a car driven by Mr. Centeio who claimed CW-3 was "about to witness a murder." ECF 1332, p.12. CW-3 states that he then saw Mr. Bethea approach a vehicle and fire multiple gun shots. CW-3 claims Mr. Centeio told him Victim No. 11's first name, and that days after the shooting, Mr.

Bethea told CW-3 that he "really don't miss" and "didn't miss a shot" when approaching Victim No. 11.

2) *March 21, 2019 shooting of Victim No. 14 by Clayton Rodrigues and Eric Correia ("2019 act").*

Victim No. 14 was shot multiple times while entering his vehicle with his girlfriend on Clayborne Street in Dorchester. CW-3 states that Mr. Correia called him multiple times on March 21, 2019, after observing Victim No. 14, a member of rival gang Wendover/NOB, near Clayborne Street. CW-3 states that Mr. Correia told him on the phone that since he was wearing a GPS monitoring bracelet, he did not want to approach Victim No. 14 personally. CW-3 states that Mr. Correia told him that he called others, including CW-3 who did not pick up the call, and eventually Mr. Rodrigues "answered his phone and shot [Victim No. 14]." GPS monitoring data corroborates Mr. Correia's presence around the scene of the shooting just prior to shots being fired.

3) *June 15, 2021 assault of Victim Nos. 9 and 10 by Anthony Centeio and Keiarri Dyette ("2021 act").*

Victim Nos. 9 and 10, two Wendover/NOB gang members, were assaulted in the vicinity of Fernandez Liquors in Dorchester. CW-3 stated that Mr. Dyette told CW-3 that he had "spit on" and "pistol whipped" Victim No. 10, to the point where Victim No. 10 "begg[ed] for his life." A recorded call between CW-1 and Mr. Centeio apparently reveals that Mr. Centeio left his vehicle to assault Victim No. 9, while Mr. Dyette assaulted and pistol-whipped Victim No. 10. Mr. Centeio purportedly told Mr. Dyette not to kill Victim No. 9 because the incident would be recorded on the Fernandez Liquor store surveillance cameras.

## ARGUMENT

The government proffers these incidents as racketeering acts in furtherance of Cameron Street's goals and objectives. However, there is no evidence that Mr. Elliott intended to further any of the three criminal endeavors. No agreement can properly be inferred as to Mr. Elliott, as the government has not proffered any evidence that Mr. Elliott knew of, was present for, or even learned of these actions. There is no mention at all of Mr. Elliott or his knowledge of these events.

The government's burden in proving a conspiracy to violate § 1962(d), is to show that the defendant "knew about and agreed to facilitate" a substantive RICO violation. *United States v. Leoner-Aguirre*, 939 F.3d 310, 316–17 (1st Cir. 2019), *citing Salinas v. United States*, 522 U.S. 52, 66 (1997). Here, the 2018, 2019, and 2021 violent acts are wholly untethered to the question whether Mr. Elliott knew about or agreed to facilitate Cameron Street's unlawful conduct. If believed, the shootings and assault do not tend to make it more probable that Mr. Elliott agreed Cameron Street would engage in two or more unlawful predicate acts. As such, they lack the requisite indicia of relevance for admission at trial. *See* Fed. R. Evid. 401. Proceeding under a theory of RICO conspiracy should not relieve the government of its obligation to abide by the well-established evidentiary safeguards imposed to prevent admission of testimony that is not relevant to the government case against the defendant. The government is not automatically allowed to introduce a tranche of racketeering acts that bear no connection to Mr. Elliott or the purported agreement Mr. Elliott made to further Cameron Street's illegal activity. *Contrast United States v. Cianci*, 378 F.3d 71, 90 (1st Cir. 2004)(a conspiratorial agreement must be reasonably inferred from the defendant's words and actions).

The absence of a credible nexus to Mr. Elliott is best illustrated by contrasting the 2018, 2019, and 2021 acts with evidence of another murder Mr. Elliott does not move *in limine* to exclude, an August 20, 2016 alleged murder of Wendover/NOB associate Ailton Goncalves.[2] As related to this incident, CW-3 states that Mr. Elliott is present in a so-called "celebration video" of several Cameron Street members gathering on the evening of the fatal shooting. ECF 1332, pp. 9-10. This evidence – at least if CW-3 is to be believed – bears a purported nexus to Mr. Elliott.

While the law generally holds conspirators responsible for acts of their coconspirators during the existence and furtherance of a conspiracy, these one-off violent acts are not probative of Mr. Elliott's agreement or participation in the conspiracy. Nor does it show a common system of the purported conspiracy. *Contract United States v. Soto-Beniquez*, 356 F.3d 1, 30 (1st Cir. 2003)(admitting murder evidence in separate trial to demonstrate operation and development of conspiracy's system of common defense). Inclusion of such evidence is likely to lead to jury confusion. *See id.* (recognizing the potential for jury confusion in admitting evidence of crimes not committed by defendant in a separate trial).

The 2018, 2019, and 2021 acts involve three different sets of alleged coconspirators (Mr. Bethea/Mr. Centeio; Mr. Correia/Mr. Rodrigues; and Mr. Dyette/Mr. Centeio) from Cameron Street – yet Mr. Elliott is not among them. Evidence of a racketeering act absent a connection to Mr. Elliott is simply too attenuated from elements of conspiracy, that is, that *Mr. Elliott* agreed that at least two acts of racketeering would be committed in furtherance of the conspiracy, to be relevant. *See Leoner-Aguirre*, 939 F.3d at 317. This is not to split hairs. The Court's gatekeeping role is to ensure the evidence is relevant to the case at hand, which for a conspiracy case, is

---

[2] Aaron Almeida was convicted of first-degree murder and Danilo Depina pleaded guilty to manslaughter in connection with this shooting. Both individuals are alleged to be Cameron Street. ECF p. 10, n.3.

relevant to the *agreement*. The Court should not loosen these basic evidentiary standards where, as here, the government has charged a wide-sweeping conspiracy that it claims opens the door to innumerable acts unrelated to Mr. Elliott.

This is also one of the rare instances in which "evidence against a coconspirator is so inflammatory that the risk of prejudice [] is unacceptably great." *United States v. David*, 940 F.2d 722, 736–37 (1st Cir. 1991). All three acts display a callousness for human life that will evoke great emotion in a jury. The 2018 and 2019 acts are premeditated and deliberate shootings that, while not resulting in death, caused grave injury. The 2021 act includes a victim being beaten within inches of his life for purportedly crossing into Cameron Street territory. The acts, individually and collectively, are highly prejudicial by their nature. They are made even more prejudicial by the fact that Mr. Elliott is charged in the operative indictment with aiding and abetting a murder. The Duarte shooting, however, has no connection to these acts. There is no overlap in participants, location, or evidence. Nevertheless, because Mr. Elliott is charged with the murder predicate act, and the jury will hear evidence on this charge, the risk that the jury will place too much weight on the 2018, 2019, and/or 2021 acts is high.  By contrast, and as described above, testimony of these acts have little, if any, probative value as to Mr. Elliott, who is not even alleged to have known about them. In short, the 2018, 2019, and 2021 acts are not evidence of his agreement to further the conspiracy. They serve only to taint Mr. Elliott due to his alleged association with perpetrators of those crimes. *See, e.g., United States v. Abdelaziz,* 68 F.4th 1, 57-59 (1st Cir. 2023 (admission of nature and depth of the allegedly corrupt scheme is still limited by FRE 403); *United States v. Martinez*, 994 F.3d 1, 14 (1st Cir. 2021)(evidence of others' acts admissible against defendant in single-defendant trial for conspiracy, but is still subject to limitations of FRE 403)

Further, the inclusion of bad acts committed by members other than Mr. Elliott presents a high risk of jury confusion. Unlike cases where courts have mitigated potential unfair prejudice by instructing the jury to consider evidence against each defendant separately, a limiting instruction is of limited utility in this instance. *Contrast United States v. Sabatino*, 943 F.2d 94, 96 (1st Cir. 1991)(limiting instruction adequately safeguarded defendant's rights where prejudicial value did not outweigh probative value). Again, Mr. Elliott is scheduled for trial as the sole defendant. None of the perpetrators of the 2018, 2019, or 2021 acts will be present or adjudicated alongside Mr. Elliott. The jury will be naturally inclined to hold someone responsible for the violent assaults and attacks, and rightly or wrongly, will blame Mr. Elliott for the violent crimes of his alleged associates, whether or not such an inference is permissible under the law. Thus, even a carefully worded jury instruction is unlikely to mitigate the great prejudice Mr. Elliott will endure if the 2018, 2019 and 2021 acts are admitted at trial. Such prejudice substantially outweighs any minimal probative value of violent acts with no clear connection to Mr. Elliott.

What is more, evidence of violent acts by other alleged members of Cameron Street will mislead the jury and confuse the issues. The jury is not asked to decide whether members of Cameron Street were violent. Evidence of violent acts with no nexus to Mr. Elliott would be confusing and misleading because there is no connection between the charges against Mr. Elliott and this evidence at trial.

## **CONCLUSION**

For the reasons described above, Mr. Elliott respectfully requests that the Court exclude all evidence of a June 11, 2018 shooting of Victim No. 11 by Daronde Bethea; a March 21, 2019

shooting of Victim No. 14 by Clayton Rodrigues and Eric Correia; and a June 15, 2021 assault of Victim Nos. 9 and 10 by Anthony Centeio and Keiarri Dyette.

Dated: February 7, 2026                      Respectfully submitted,

TAKARI ELLIOTT

By his attorneys,

*/s/ Megan A. Siddall*
Megan A. Siddall (BBO No. 568979)
Cloherty & Steinberg, LLP
One Financial Center, Suite 1120
Boston, MA 02111
Tel. (617) 481-0160
msiddall@clohertysteinberg.com

*/s/ Elizabeth J. McEvoy*
Elizabeth J. McEvoy (BBO No. 683191)
Epstein Becker & Green, P.C.
One Financial Center, Suite 1520
Boston, MA 02111
Tel. (617) 603-1100
emcevoy@ebglaw.com

## LOCAL RULE 7.1 CERTIFICATE

Per Local Rule 7.1, counsel for Mr. Elliott conferred with counsel for the government. The government opposes the relief sought in this motion.

*/s/ Megan A. Siddall*
Megan A. Siddall

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF on all parties on February 7, 2026.

*/s/ Megan A. Siddall*
Megan A. Siddall