UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAKARI ELLIOTT<br><br>     Defendant | CRIMINAL No. 21-10354-JEK |

## GOVERNMENT'S OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE RAP VIDEO

The United States of America, by Leah B. Foley, United States Attorney, and Christopher Pohl and Brian A. Fogerty, Assistant U.S. Attorneys for the District of Massachusetts, opposes defendant Takari Elliott's motion *in limine* to exclude a music video in which he appears with other Cameron Street gang members that is titled "Y'all Don't Hear Me." ECF No. 1327. Elliott moves to exclude this video depicting him and fellow gang members exalting the charged racketeering enterprise, arguing that (1) the evidence is irrelevant because he does not supply the lyrics and, in some cases, rap artists exaggerate and embellish; (2) the video is profane, and it depicts and describes violence; and (3) rap music implicates issues of racial bias. The Court should reject these arguments for several reasons.

<u>First</u>, federal courts regularly admit evidence in the form of rap music videos and lyrics where the evidence is probative of the charged offenses. This is especially true where the defendant is charged with racketeering and gang-related violence. *See, e.g., United States v. Pierce*, 785 F.3d 832. 841 (2d Cir. 2015) (affirming admission of rap video to "establish [the defendant's] association with members of the enterprise and his motive to participate in the charged conduct against member of the [rival gang]."). Courts subject this evidence to the routine

balancing test under Rule 403, frequently holding that "[r]ap lyrics . . . are properly admitted . . . where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *Id.*; *see also United States v. Herron*, 762 Fed. Appx. 25, 30 (2d Cir. 2019) (affirming admission of profane and offensive rap videos because they were probative of, *inter alia*, the existence of, and defendant's participation in, the RICO enterprise); *see also United States v. Banks*, 104 F.4th 496, 517–18 (4th Cir. 2024) (same).[1]

Second, the video, which is a visual and aural celebration of the Cameron Street gang, is probative of several important facts. It tends to prove that the Cameron Street racketeering enterprise exists by, among other things, depicting identifiable members in the gang's distinctive clothing gathering while a leader recounts the gang's criminal objectives. This includes Cameron Street leader Anthony Centeio wearing a Montreal Canadien's jersey displaying a large "C" for Cameron Street. *See* ECF No. 403, ¶ 3. And Elliott also wearing a shirt with a "C" on his chest. *Id.*

The video proves that Elloitt is a member of the enterprise, a fact the jury can find from Elloitt's decision to participate in the production of a video depicting Cameron Street members, which includes lyrics that glorify the enterprise and its crimes. Moreover, the video helps prove Elliott's Cameron-Street-based relationship with now-deceased Cameron Street member Marvin Veiga in that Viega is depicted as a celebrated member of the enterprise. Of course, this is relevant

---

[1] The government is not aware of First Circuit authority addressing the admissibility of rap music videos or lyrics. However, in an MS-13 racketeering conspiracy trial, another session of this court denied a defendant's motion *in limine* to exclude YouTube videos depicting MS-13 recruitment songs that included explicit references to violence. *See United States v. Gonzalez*, No. 15-cr-10338-FDS (D. Mass.), ECF Nos. 2413 (Defendant's motion *in limine*), 2481 (Gov't opposition), and 2514 (electronic order noting the motion was denied).

at trial because Elloitt and Viega worked together to commit one of the overt acts of the charged conspiracy: the October 2020 murder of Manuel Duarte.  ECF No. 403, ¶ 10(dd).

The video's depictions of, and lyrics describing, crimes and violence are also evidence of the charged enterprise's objectives.  And the video's references to specific members and acts of violence will corroborate the trial testimony of former Cameron Street member CW-3.  *See, e.g., United States v. Smith*, 967 F.3d 1196, 1205–06 (11th Cir. 2020) (affirming admission of rap video, holding, among other things, that it corroborated witness testimony regarding the charged offense).

Third, while the rap genre undoubtedly includes examples of artistic exaggeration and embellishment, that is no bar to admission.  The government may use the defendant's and co-conspirators' words and actions to prove the underlying crimes.  Here, the government has a right to try to prove, in conjunction with other evidence, that what charged co-conspirator Centeio rapped (and the defendant affirmed) was genuine.  To hold otherwise merely because it is part of a rap video would immunize any statement uttered over a beat.

Fourth, the video is not unduly prejudicial in the context of this RICO conspiracy.  The Third Superseding Indictment alleges that Elliott and Cameron Street co-conspirators engaged in various crimes and acts of violence, including the brutal murder of Manuel Duarte.  ECF No. 403, ¶ 10(cc)–(ee).  The video includes references to acts of violence and murder.  ECF No. 1327-1 at 3–5.  That is one of the reasons why it is highly probative.  But given the context, and the other evidence of violence and death that this trial will include, the 2-minute, 55-second music video does not risk undue prejudice.  Nor does this now-mainstream genre present a genuine risk that the jury will convict the defendant based on racial animus.  To be sure, the government anticipates that the Court will instruct the jury that race must play no role in their consideration of the evidence.

3

## Background

### I.     The Cameron Street Enterprise.

The Third Superseding Indictment alleges that Elliott was a member of Cameron Street, an enterprise that from in or about 2010 to the present used violence and intimidation to preserve, protect, and expand its territory and enhance its prestige, reputation, and position in the community.  ECF No. 403, ¶¶ 1–4, and 8.  Cameron Street members promoted a climate of fear through violence, threats of violence, and intimidation.  ECF No. 403, ¶¶ 4, 7(b).  Cameron Street members possessed, carried, and used firearms to murder and assault gang rivals as well as protect narcotics and drug proceeds, intimidate potential witnesses, and ensure the personal safety of its members.  ECF No. 403, ¶¶ 4, 7(d).  Cameron Street members distributed controlled substances and firearms and committed robberies in part to generate income for the enterprise.  ECF No. 403, ¶¶ 6(c) and (f), 7(d).

Members of Cameron Street refer to themselves as such or use abbreviations such as "Cam," "C," "Camily," and "Body Bag Boys" to describe the gang.  Some members of the gang mark their bodies with distinguishing tattoos or wear logos for sports teams that feature the letter "C," including, for instance, the Montreal Canadiens, or Cleveland, or "KC" (from Major League Baseball's Kansas City Royals), meant to signify "Killa Cam."  ECF No. 403, ¶ 3.

### II.     Cameron Street Members Use Music Videos to Promote the Enterprise.

The Third Superseding Indictment specifically alleges that "[m]embers of Cameron Street regularly post videos or use social media applications to promote Cameron Street, celebrate murders and other violent crimes committed by Cameron Street, and denigrate gang rivals."  ECF No. 403, ¶ 3.  The "Y'all Don't Hear Me" video is a well-produced and choreographed example of this.  The video features Cameron Street members Anthony Centeio and Elliott, as well as other Cameron Street members, such as CW-3.  These enterprise members are depicted wearing

Cameron Street-related clothing.  *See* ECF No. 403, ¶ 3.  And Elloitt sways and gestures approvingly as Centeio promotes the enterprise, rapping about the members and their crimes.  *See* ECF No. 1327-1 at 3–5 (lyrics to video "Y'all Don't Hear Me").

The "Y'all Don't Hear Me" lyrics closely track the allegations in the Third Superseding Indictment.  Set forth below is a chart identifying specific lyrics and the corresponding paragraph of the Third Superseding Indictment.

| "Y'all Don't Hear Me" Lyric[2] | Third Superseding Indictment |
|---|---|
| "Yeah.  It's Cam in this bitch." | **Para. 3:** Members of Cameron Street refer to themselves as such or use abbreviations such as "Cam," "C," "Camily," "Killa Cam," and "Body Bag Boys" to describe the gang. |
| "Where we catching homicides where these niggas really die" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation.  These acts of violence include murder and assault with deadly weapons, often firearms.  Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. |

---

[2] *See* ECF No. 1327-1 at 3–5.  The government notes that the early draft transcript the defendant provided is not entirely accurate.  For example, according to CW-3, the reference to "Low-Key Drew" is actually a reference to two deceased Cameron Street members: Manuel Daveiga, a/k/a "Loc," a/k/a "Loki," and "Drew," is Andrew Tavares.  The government intends to provide a revised draft transcript in advance of trial.

| | |
|---|---|
| | Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
| "Where these niggas go up state" | **Para. 6(d):** Keeping rivals, victims, potential victims, community members, and law enforcement in fear of Cameron Street and its members and associates through violence, threats of violence, and intimidation. |
| "Where these niggas do bids" | **Para. 6(d):** Keeping rivals, victims, potential victims, community members, and law enforcement in fear of Cameron Street and its members and associates through violence, threats of violence, and intimidation. |
| "then I'mma ride up, do a couple scouts, plotting, scheming a damn rout" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation. These acts of violence include murder and assault with deadly |

| | |
|---|---|
| | weapons, often firearms. Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
| "I might have to send my young boys out"<br><br>"Tell them niggas keep squeezing 'til their gun run out" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation. These acts of violence include murder and assault with deadly weapons, often firearms. Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and |

| | |
|---|---|
| | accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
| "Sixty-two's run twenty-five and two-fifties" "I break them down to eight-balls, nigga, it move quickly" "Money is the motive, so my hands get itchy" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation.  These acts of violence include murder and assault with deadly weapons, often firearms.  Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |

| | |
|---|---|
| "Had them state greens looking like a fresh pair of Dickies" | **Para. 6(d):** Keeping rivals, victims, potential victims, community members, and law enforcement in fear of Cameron Street and its members and associates through violence, threats of violence, and intimidation. |
| "Yeah, I swear to god I can name a couple niggas I done scar"<br><br>"A couple of niggas sent up to god" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation.  These acts of violence include murder and assault with deadly weapons, often firearms.  Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts.  Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement.  *See also* ¶¶ 6(c), (d), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |

| | |
|---|---|
| "Switching V's every week, nigga, 'cause the feds on it"<br><br>"Ride behind tints 'cause the shit makes sense"<br><br>"You aim your gun right, and them shits make dents" | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation. These acts of violence include murder and assault with deadly weapons, often firearms. Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (d), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
| "I'm talking big guns"<br><br>"You gotta hold 'em where your chest at | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, and intimidation. These acts of violence include murder and assault with deadly weapons, often firearms. Cameron Street |

| | |
|---|---|
| | members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (d), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
| "Yeah, man.  It's free E till they free E, man.  R-I-P Low-key Drew.   You already know, man, we out here, man"<br><br>"Killer cam we body-bag boys, man.   We yellow tape the shit the fuck up" | **Para. 3:** Members of Cameron Street refer to themselves as such or use abbreviations such as "Cam," "C," "Camily," "Killa Cam," and "Body Bag Boys" to describe the gang. |
| "We in here, you hear?  Uh-huh.  Yeah.  Cam shit, my nigga." | **Para. 3:** Members of Cameron Street refer to themselves as such or use abbreviations such as "Cam," "C," "Camily," "Killa Cam," and "Body Bag Boys" to describe the gang. |
| Huh.  Green light on everything.  Everything's a go, my nigga. | **Para. 4:** To protect the power, reputation, and territory of Cameron Street, members were required to use violence, threats of violence, |

| | and intimidation. These acts of violence include murder and assault with deadly weapons, often firearms. Cameron Street members maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts. Cameron Street members are responsible for assisting one another with obtaining and accessing firearms, forming and maintaining drug trafficking connections, resolving territorial disputes with rival gangs, and providing safe havens for members who are wanted by law enforcement. *See also* ¶¶ 6(c), (d), (e), (g), 8(a), 10(b), (n), (bb), (dd), and 11. |
|---|---|

At trial, the government will call cooperating witnesses who were themselves associated with Cameron Street. In addition to testifying about the formation, membership, and purpose of the Cameron Street racketeering conspiracy, the cooperating witnesses, including CW-3 who is depicted in the "Y'all Don't Hear Me" video, will identify Elliott and other Cameron Street members and describe their respective roles in enterprise. Moreover, CW-3 will explain the meaning of various images, scenes, and lyrics from the video. *See* Letter to Counsel dated January 19, 2024, attached as Exhibit A (describing specific images, scenes, and lyrics that CW-3 will explain).

## Argument

I.    **The Court Should Admit the Cameron Street Music Video "Y'all Don't Hear Me" Because it Is Evidence of the RICO Enterprise and Elloitt's Membership and Participation.**

A.    Rap videos are admissible and subject to routine Rule 403 analysis.

It is well-settled that rap music videos and lyrics are admissible when their probative value outweighs the risk of undue prejudice. *See Pierce*, 785 F.3d at 841 (holding "Rap lyrics and tattoos are properly admitted, however, where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice.") (citing *United States v. Moore*, 639 F.3d 443, 447–48 (8th Cir. 2011) (affirming admission of profane and violent rap recordings over Fed. R. Evid. 403 challenge where lyrics were probative of defendant's participation in narcotics conspiracy) and *United States v. Belfast*, 611 F.3d 783, 820 (11th Cir. 2010) (holding that rap lyrics were relevant and their probative value not substantially outweighed by any unfair prejudice in case where lyrics were used to show that defendant was associated with his father Charles Taylor's Anti-Terrorism Unit, which tortured Sierra Leoneans in Liberia)). *See also United States v. Carpenter*, No. 21-837-CR, 2022 U.S. App. LEXIS 31605, *7–8 (2d Cir. Nov. 16, 2022) (unpublished) (affirming admission of rap lyrics and music videos, citing *Pierce*, and holding that the defendant's rap lyrics and music videos were properly admitted because they "speak with specificity to the precise conduct with which he was charged").

The argument for admission of rap videos and lyrics is particularly strong in cases involving material that is probative of the existence of a charged RICO enterprise and the defendant's membership therein. For example, in *Pierce*, the Second Circuit held that the court properly admitted a rap video from the defendant's Facebook page that depicted the defendant at or near the RICO enterprise's territory with a cooperating witness and other gang members. *Pierce*, 785 F.3d at 840. Rejecting the defendant's argument that the "rap lyrics were merely

'fictional artistic expressions' and 'perverse puffery,'" the appellate court held that the video was admissible because it "helped establish [the defendant's] association with members of the enterprise and his motive to participate in the charged conduct against members of" a rival gang. *Id.* at 840–41; *see also Banks*, 104 F.4th at 517 (affirming admission of social media posts, music videos, and lyrics in RICO and drug conspiracy case, where the evidence featured "the Defendants surrounded by firearms or cash; making [gang] hand signals or wearing [gang] clothing; and flaunting a violent, drug-fueled lifestyle with specific lyrics and images connecting these acts specifically to [the gang's] turf.").

      B.   <u>The "Y'all Don't Hear Me" video is admissible evidence of the existence of the Cameron Street enterprise and Elliott's role in the gang.</u>

      i.   <u>The video is probative of material facts under Rule 401.</u>

Just as in *Pierce*, this court should admit the "Y'all Don't Hear Me" video because it proves the existence of the Cameron Street enterprise and Elloitt's membership and participation. Here, the Third Superseding Indictment specifically alleges that the enterprise makes these sorts of videos "to promote Cameron Street, celebrate murders and other violent crimes committed by Cameron Street, and denigrate gang rivals." ECF No. 403, ¶ 3. And that is exactly what the video does. Centeio raps about Cameron Street, identifies its members (including those who have perished, such as Marvin Viega), describes the enterprise's criminal conduct, all while depicting and promoting the gang's symbols (e.g., clothing containing the letters "C" for Cameron Street, and "H" for Hancock Street). *See also Banks*, 104 F.4th at 517.

Proving the defendant's membership and unlawful agreement are important aspects of the government's case. *See* ECF No. 1325 at 27, 29–30 (Gov't Proposed Jury Instr.). The government will carry its burden by, among other things, calling CW-3 to testify about the enterprise and defendant's role in it. However, the government cannot simply ask the jury to take CW-3's word

for it; the government must introduce evidence to corroborate CW-3's testimony. This video in which CW-3 appears provides compelling audio and visual corroboration for CW-3's testimony. *See Smith*, 967 F.3d at 1205–06 (affirming admission of rap video, holding, among other things, that it corroborated witness testimony regarding the charged offense).

Elliott argues that the video is irrelevant because the lyrics and imagery are merely exaggerations. ECF No. 1327 at 9–11. Surely, that is an argument he may make at trial. However, admissibility does not turn on the defendant's assertion about the sincerity of what co-conspirator Centeio says (and Elliott adopts). It is for the jury to decide whether to believe that this Cameron Street video reveals the existence of a Cameron Street enterprise and the defendant's role therein. *See* First Cir. Pattern Crim. Jury Instr. 2.11 ("It is for you to decide (1) whether [defendant] made the statement, and (2) if so, how much weight to give it. In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the statement may have been made [and any facts or circumstances tending to corroborate or contradict the version of events described in the statement].").

Moreover, the Court should reject Elliott's argument that the video is cumulative. ECF No. 1327 at 12. The government has the burden to prove that Elliott was a Cameron Street co-conspirator. The half-concession that "Elliott will not dispute that he knows Mr. Centeio and other members of the Camerson Street gang" is not proof beyond a reasonable doubt that Elliott knowingly agreed to participate in the affairs of the Cameron Street enterprise with the charged co-conspirators. And even if it was, the Supreme Court has held that the government is generally "entitled to prove its case free from any defendant's option to stipulate the evidence away." *See Old Chief v. United States*, 519 U.S. 172, 189 (1997).

ii.    <u>Centeio's lyrics are admissible as non-hearsay</u>.

As a threshold matter, admission also does not turn on whether Elliott himself raps in the video.  The visual depictions alone are relevant and probative of Elliott's role in the charged enterprise.  His appearance in a Cameron-Street-produced video alongside other Cameron Street members while wearing Cameron Street clothing is evidence that tends to prove the existence of the enterprise and Elliott's association with that group.  *See* Fed. R. Evid. 401.  The video need not be "definitive evidence of his membership" in Cameron Street to clear the low bar for relevance.  *Compare United States v. Armenteros-Chervoni*, 133 F.4th 8, 27 (1st Cir. 2025) ("We have previously explained that Rule 401 'set[s] a very low bar for relevance.'") (citation omitted) *with* ECF No. 1327 at 9.

Nevertheless, Centeio's words are probative and important admissible evidence of the enterprise and its members'—including Elliott's—criminal objectives.[3]  Centeio's lyrics are admissible as statements of a co-conspirator in furtherance of the RICO conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).  Such statements are admissible at trial for the truth of the matter asserted when the proponent establishes, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the defendant was a member of the conspiracy, (3) the declarant was also a member of the conspiracy, and (4) the declarant's statements were made in furtherance of the conspiracy.  *See United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012).  Through CW-3 and other evidence, the government will prove that Centeio and Elliott are Cameron Street members and part of the RICO

---

[3] Unlike in *United States v. Williams*, 663 F. Supp. 3d 1085, 1134 (D. Ariz. 2022), *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011), and *United States v. Williams*, No. 3:13-cr-764-WHO-1, 2017 U.S. Dist. LEXIS 160102, at *17–20 (N.D. Cal. Sept. 28, 2017), where courts excluded rap videos because the defendant was either not depicted or the author of the lyrics was unknown or not a defendant, Elliott has a direct connection to the "Y'all Don't Hear Me" video: he is in it.  There is no dispute that charged co-conspirator Centeio raps the lyrics.

conspiracy, as alleged in the Third Superseding Indictment.[4]  The video depicts Centeio promoting the Cameron Street enterprise and the other predicate crimes (e.g., murder, shootings, and drug trafficking), just as the Third Superseding Indictment specifically alleges.  *See supra* at  5–12; *see also United States v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012) (quoting *United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002)) ("[A] co-conspirator's statement is considered to be in furtherance of the conspiracy as long as it tends to promote one or more of the objects of the conspiracy." ).

Alternatively, Centeio's lyrics are admissible as Elliott's adoptive admissions.  *See* Fed. R. Evid. 801(d)(2)(B); *see United States v. Duval*, 496 F.3d 64, 76 (1st Cir. 2007) (holding the First Circuit has "long recognized 'so-called adoptive admissions, including admissions by silence or acquiescence,' stating "a party's agreement with a fact stated by another may be inferred from (or 'adopted' by) silence . . . when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception.'").  From the video, it is clear that Elliott knowingly participated in this well-choreographed Cameron Street production with his fellow enterprise members.  The video depicts Elliot in a cemetery standing near Centeio as Centeio raps the lyrics and Elliott sways and gestures approvingly.  This is not video surveillance footage or a surreptitious recording; it is the culmination of a series of purposeful acts by Elliott and Centeio.  And, in the video, Centeio describes, among other things, "catching homicides," "go[ing] up state" (i.e., going to prison), and selling cocaine (i.e., "break them down to eight-balls).  ECF No. 1327-1 at 3–5.[5]

---

[4]  Indeed, Centeio pleaded guilty to the RICO conspiracy count, pursuant to a plea agreement under Rule 11(c)(1)(C).  *See* ECF No. 1294 and 195.  The Court deferred acceptance of the plea agreement until the May 7, 2026 sentencing hearing.  ECF No. 1295.

[5]  Moreover, even if the lyrics are hearsay, they are subject to the exception under Fed. R. Evid. 803(3) because they are statements of Centeio's then-existing state of mind (such as motive, intent, or plan) regarding Cameron Street and its objectives.

Whether the Court admits the audio as statements of a co-conspirator or as Elliott's adoptive admissions, Centeio's lyrics are probative of Elliott's role in the enterprise and the Cameron Street terms that are alleged in the Third Superseding Indictment. For example, in addition to multiple references to murder, firearms, shootings, drug trafficking, and making money, Centeio bookends the video with call outs to "Loki" and "Drew," two prominent, now-deceased members of Cameron Street, and the universal Cameron Street signifiers: "Yeah. It's Cam in this bitch" and "Killer Cam we body-bag boys, man." ECF No. 1327-1 at 3, 5.[6]

        iii.   <u>The video presents no risk of unfair prejudice under Rule 403</u>.

The video contains explicit references to murder, firearms, drug trafficking, and gang-affiliation. That is the point. In this case, Third Superseding Indictment alleges, and the evidence will prove, that Elliot joined the RICO conspiracy and participated in each of these types of crimes. *See United States v. Ranney*, 719 F.2d 1183, 1188 (1st Cir. 1983) ("That certain evidence tends to incriminate a defendant is insufficient to establish unfair prejudice under Rule 403. After all, the entire purpose for introducing evidence at a criminal trial is to establish the defendant's guilt or innocence.").

Elliott argues that the unfair prejudice arising from the video's criminal imagery and violent lyrics substantially outweighs any probative value. ECF No. 1327 at 13. The government acknowledges that the video depicts and describes gang affiliation, violent crimes and drug trafficking. However, given the context, that is appropriately prejudicial. The Court must evaluate

---

[6] Two of the out-of-circuit district court decisions Elliott cites in support of his motion are easily distinguishable on this point. In both *United States v. Bey*, No. 16-290, 2017 U.S. Dist. LEXIS 65644, at \*12 (E.D. Pa. Apr. 28, 2017), and *United States v. Johnson*, 469 F. Supp. 3d 193, 222 (S.D.N.Y. 2019), the courts excluded the rap videos because they were insufficiently probative of a material fact. In *Bey*, a felon-in-possession of a firearm case, the government failed to offer a non-propensity basis for admission of the lyrics to satisfy Rule 404(b). In *Johnson*, the court held, unlike in this case, that the lyrics did not even reference the defendant's gang.

the risk of unfair prejudice in light of the subject matter and the other admissible evidence.  *See United States v. Mehanna*, 735 F.3d 32, 64 (1st Cir. 2013) (in terrorism case, holding that while the challenged evidence is emotionally charged, "much of this emotional overlay is directly related to the nature of the crimes that the defendant has set out to commit."); *see also United States v. Ramirez-Rivera*, 800 F.3d 1, 44 (1st Cir. 2015) (in RICO conspiracy case, rejecting Rule 403 challenge to admission of evidence of uncharged murder, holding "[g]iven the nature of this violence-infested case, we see no reason why testimony about an additional murder would cause the jury an improper emotional reaction"); *cf. United States v. Sanchez*, 440 Fed. Appx. 436, 439 (6th Cir. 2011) (affirming admission of prior child molestation evidence, rejecting a Rule 403 challenge, holding that given the subject matter of the case, "nearly all evidence" admitted under Rule 414 regarding prior child sexual abuse will be "highly prejudicial").  Here, the jury will see evidence of Elloitt's gun possession, cocaine trafficking, murder of Manuel Duarte and other violent crimes committed by members of Cameron Street.  Viewed against this backdrop, the video's depictions and statements glorifying those types of crimes present no risk that the jury will be shocked into deciding the case on a purely emotional basis.

Elloitt also argues that the rap genre implicates issues of race that will cause the jury to decide the case based on racial animus.  ECF No. 1327 at 13–14.  Citing sociological studies from ten or more years ago, Elloitt's argument ignores the consensus that rap has developed into a mainstream art form ubiquitous in American culture.  *See United States v. Stuckey*, 253 Fed. Appx. 468, 481–84 (6th Cir. 2007) (affirming admission of rap lyrics, holding "Rap is no longer an underground phenomenon and is a mainstream music genre.  Reasonable jurors would be unlikely to reason that a rapper is violent simply because he raps about violence.").  Additionally, the government anticipates that the Court will instruct the jury that the race of the defendant or any

other participant in the case is irrelevant and may not serve as a basis for the jury's verdict. *See United States v. Gentles*, 619 F.3d 75, 82 (1st Cir. 2010) ("It is a well established tenet of our judicial system that juries are presumed to follow . . . instructions.").

Finally, the Court should reject Ellott's argument that admission of the video will trigger a cascade of expert testimony that will waste time and delay the trial. ECF No. 1327 at 14–15. There is no real risk of undue delay. If the defendant elects to call Prof. Nielson to describe characteristics of the rap genre, including the use of exaggeration and embellishment, that testimony will not drastically alter the trial's length. Plus, the Court should exclude any testimony from Prof. Nielson in which he opines about the truth or veracity of Centeio and/or Elliott's statements. *See, e.g.*, *United States v. Gonzalez-Maldonado,* 115 F.3d 9, 16 (1st Cir. 1997) ("an expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion."); *United States v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991) ("Credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury.").

## <u>Conclusion</u>

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion *in limine* to exclude the rap video. ECF No. 1327.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:     /s/ Brian A. Fogerty
        CHRISTOPHER POHL
        BRIAN A. FOGERTY
        Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

 /s/ Brian A. Fogerty
BRIAN A. FOGERTY
Assistant United States Attorney

Date: February 9, 2026